IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHABNAM ZAFARMAND, et al.,

Plaintiffs,

v.

MICHAEL R. POMPEO, et al.,

Defendants.

Case No. 20-cv-00803-MMC

**ORDER DENYING PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION; GRANTING
DEFENDANTS' MOTION TO DISMISS**

Before the Court are the following motions: (1) plaintiffs' "Motion for Preliminary
Injunction," filed February 14, 2020, and (2) defendants' "Motion to Dismiss," filed April 7,
2020.  The motions have been fully briefed.  Having read and considered the papers filed
in support of and in opposition to the motions, the Court rules as follows.[1]

### BACKGROUND

Plaintiffs are three groups of individuals: (1) U.S citizens ("Petitioner Plaintiffs")
who submitted visa applications for (2) their Iranian siblings or parents ("Beneficiary
Plaintiffs") and (3) other Iranian relatives ("Derivative Plaintiffs").  Plaintiffs have filed the
instant action against the U.S. Department of Homeland Security ("DHS"), the U.S.
Department of State ("DOS"), and Michael R. Pompeo, in his official capacity as
Secretary of State, to challenge defendants' alleged "withholding of adjudications of case-
by-case waivers of Presidential Proclamation 9645, Enhancing Vetting Capabilities and
Processes for Detecting Attempted Entry into the United States by Terrorists or Other
Public-Safety Threats" ("PP 9645").  (See Compl. ¶ 1.)

**A. Presidential Proclamation 9645**

PP 9645 "prohibits the entry of all immigrants and certain categories of non-
immigrants for nationals of Iran" and certain other countries.  (See Compl. ¶ 6.)  Such

---

[1] By order filed June 5, 2020, the Court took the matters under submission.

United States District Court
Northern District of California

prohibition is based on the Secretary of Homeland Security's findings that those countries "continue to have 'inadequate' identity-management protocols, information-sharing practices, and risk factors . . . such that entry restrictions and limitations are recommended." See PP 9645 § 1(g).  As to Iran, PP 9645 notes that "the Department of State has . . . designated Iran as a state sponsor of terrorism" and that Iran "regularly fails to cooperate with the United States Government in identifying security risks, fails to satisfy at least one key risk criterion, is the source of significant terrorist threats, and fails to receive its nationals subject to final orders of removal from the United States." See id. § 2(b)(i).

PP 9645 provides, however, that "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited." See id. § 3(c).  Waivers may be granted where the "foreign national demonstrates to the consular officer's or CBP official's satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." See id. § 3(c)(i).

Under PP 9645, the "Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate." See id. § 3(c).  Such guidance includes "standards, policies, and procedures" for "determining whether entry of a foreign national poses a threat to national security" and for "addressing and managing the risks of making such a determination in light of the inadequacies in information sharing, identity management, and other potential dangers posed by the nationals of individual countries subject to the restrictions and limitations imposed by [PP 9645]." See id. § 3(c)(ii).

**B.  Plaintiffs' Visa Applications**

Plaintiffs allege that, although they "have fulfilled all requirements to obtain family-

based visas" (see Compl. ¶ 5), their visa applications have been refused pursuant to PP 9645, they are currently under consideration for PP 9645 waivers, and the "national security and public safety prong . . . is the . . . only prong that has not been adjudicated" (see id. ¶ 99; see also Doc. No. 12-1 (Decl. of Chloe Dybdahl, U.S. State Department Attorney Adviser) ¶¶ 6-10 (averring "the consular office [has] made a preliminary determination that the personal hardship and national interests prongs were met and is in consultation with the Visa Office for interagency review regarding whether . . . entry could pose a threat to national security or public safety").)

According to plaintiffs, as of the filing of the instant complaint, they have waited an average of 663 days for adjudication of their waivers.  As of the date of this order, plaintiffs have waited between nineteen and thirty-two months.

## C. Plaintiffs' Claims

Plaintiffs allege "defendants, through a team called the 'PP 9645 Brain Trust,' have promulgated secret guidance on the waiver scheme that is inconsistent with PP 9645 itself."  (See Compl. ¶ 10.)  Specifically, according to plaintiffs, consular officers adjudicating waiver applications must, before they are allowed to issue a visa, "obtain concurrence from consular managers, visa chiefs, consular section chiefs, consular management, the Visa Office and/or contractors with Quality Support, Inc."  (See id. ¶ 71.)

By requiring such concurrence, plaintiffs allege, defendants have "unlawfully extended [to non-consular officers] the authority and discretion that PP 9645 granted only [to] individual consular officers."  (See id. ¶ 63.)  Plaintiffs further allege such "usurpation of consular officer authority and discretion" (see id. ¶ 113) constitutes a "pattern and policy of waiver adjudication delays" (see id. ¶ 101) and that defendants' failure "to adjudicate Beneficiary Plaintiffs' visa waivers within one year" is unreasonable (see id. ¶ 95).

According to plaintiffs, the delay in adjudicating their waivers has caused them "severe familial hardships" (see id. ¶ 86) and "severe economic hardship" (see id. ¶ 87),

and, additionally, that, as they wait, the "escalat[ing]" conflict "between the U.S. and Iran" (see id. ¶ 92) has "compound[ed] [their] anxiety about their loved ones' safety and security" (see id. ¶ 93).

Based on the above, plaintiffs assert the following four Claims for Relief: (1) "Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1)," (2) "Administrative Procedure Act, § 706(2)(A) and (D)," (3) "Mandamus," and (4) "Procedural Due Process."

**DISCUSSION**

**A. Motion for Preliminary Injunction**

By their motion for preliminary injunction, plaintiffs seek an order (1) declaring defendants' "usurpation of consular officer authority, and designation of that authority to nonconsular officers, unlawful under Section 3(c) of Presidential Proclamation" (see Doc. No. 7 at 1:4-6); (2) declaring defendants' "withholding of and unreasonable delays in their duties to adjudicate PP 9645 waiver requests for Beneficiary Plaintiffs and Derivative Plaintiffs unlawful" (see id. at 1:8-11); and (3) directing defendants to "adjudicate waiver requests for Beneficiary Plaintiffs within 45 days" (see id. at 1:11-12).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008). In the Ninth Circuit, "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

Where, as here, however, a plaintiff seeks a mandatory injunction, "the district court should deny such relief unless the facts and law clearly favor the moving party." See Stanley v. Univ. of S. California, 13 F.3d 1313, 1320 (9th Cir. 1994); see also Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1980) (holding mandatory

4

injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases").

### 1. Likelihood of Success on the Merits

Plaintiffs contend they are likely to succeed on the merits of their First and Second Claims for Relief, whereby they assert defendants have violated the Administrative Procedure Act ("APA") by, respectively, failing to adjudicate their PP 9645 waivers within a reasonable time and usurping the authority and discretion of consular officers to adjudicate PP 9645 waivers. In response, defendants argue plaintiffs' claims are not subject to judicial review and that, even if they were, plaintiffs have failed to demonstrate a likelihood of success.

#### a. Justiciability

Defendants argue plaintiffs' claims are not entitled to judicial review because (1) presidential action, such as PP 9645, is not subject to review under the APA, (2) PP 9645 does not create any privately enforceable rights, (3) review is precluded by 5 U.S.C. § 701(a), and (4) review is precluded by the doctrine of consular nonreviewability. The Court considers each argument in turn, and, for the reasons set forth below, finds plaintiffs' claims are reviewable.

##### (i) Presidential Action

At the outset, noting PP 9645 is a presidential action, defendants contend implementation of such proclamation is not subject to review under the APA.

Because "the APA does not expressly allow review of the President's action," courts generally "presume that his actions are not subject to its requirements." See Franklin v. Massachusetts, 505 U.S. 788, 801 (1992). The Ninth Circuit has held, however, that "under certain circumstances, Executive Orders, with specific statutory foundation, are treated as agency action and reviewed under the [APA]." See City of Carmel-by-the-Sea v. United States Dep't of Transp., 123 F.3d 1142, 1166 (9th Cir. 1997). Thus, "an executive order or presidential proclamation may . . . be subject to judicial review under the APA and treated as agency action when the order or

United States District Court
Northern District of California

1   proclamation 'rests upon statute.'"  See W. Watersheds Project v. Bureau of Land Mgmt.,

2   629 F. Supp. 2d 951, 965 (D. Ariz. 2009) (quoting Legal Aid Soc'y v. Brennan, 608 F.2d

3   1319, 1330 n.15 (9th Cir. 1979)).  In addition, "review of the legality of Presidential action

4   can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce

5   the President's directive."  See Hawaii v. Trump, 878 F.3d 662, 680 (9th Cir. 2017)

6   (internal quotation, citation, and alteration omitted), rev'd and remanded on other grounds

7   by Trump v. Hawaii, 138 S. Ct. 2392 (2018).

8        The proclamation here at issue, PP 9645, has a "specific statutory foundation,"

9   see City of Carmel-by-the-Sea, 123 F.3d at 1166, as it was issued pursuant to 8 U.S.C. §

10  1182(f), which "grants the President broad discretion to suspend the entry of aliens into

11  the United States," see Trump v. Hawaii, 138 S. Ct. 2392, 2408 (2018), and plaintiffs'

12  claims challenge the implementation of PP 9645 by the State Department and DHS.  See

13  Hawaii, 878 F.3d at 680-81 (holding, where plaintiffs brought claims challenging PP

14  9645's bar to entry, implementation of PP 9645 by State Department and DHS

15  "reviewable under the APA"), rev'd and remanded on other grounds by Trump v. Hawaii,

16  138 S. Ct. 2392 (2018).  Consequently, numerous district courts addressing nearly

17  identical claims to those brought here have found such claims reviewable.  See, e.g.,

18  Motaghedi v. Pompeo, 19-cv-1466-LJO, 2020 WL 207155 at *6 (E.D. Cal. Jan. 14, 2020).

19       Defendants, citing Najafi v. Pompeo, 19-cv-5782-KAW, 2019 WL 6612222 (N.D.

20  Cal. Dec. 5, 2020), argue plaintiffs' First Claim for Relief nonetheless is not reviewable

21  because PP 9645 fails to "set forth any timetable for visa adjudication."  (See Doc. No. 12

22  at 22:15.)  In Najafi, the district court, relying on City of Carmel-by-the-Sea v. United

23  States Dep't of Transp., 123 F.3d 1142 (9th Cir. 1997), found there is "no objective

24  standard in PP 9645 that can be applied to determine what is a reasonable time," and

25  concluded claims challenging unreasonable delay of waiver adjudication under PP 9645

26  are, therefore, not reviewable.  See Najafi, 2019 WL 6612222, at *5; see also City of

27  Carmel-by-the-Sea, 123 F.3d at 1166 (holding two executive orders at issue therein

28  subject to judicial review under APA where orders did not preclude such review and "set

United States District Court
Northern District of California

1    objective standards").

2          In <u>City of Carmel-by-the-Sea</u>, however, the Ninth Circuit was not asked to consider

3    a claim of unreasonable delay of agency action but, rather, a claim that a decision made

4    by the agency, i.e., the action it took, was arbitrary and capricious.  In evaluating such a

5    claim, courts assess, inter alia, "whether the agency's decision was based on a

6    consideration of the relevant factors" prescribed in the executive order.  <u>See id.</u> (internal

7    quotation and citation omitted).  Thus, for the claim asserted in <u>City of Carmel-by-the-Sea</u>

8    to be reviewable under the APA, it was necessary for the executive order to contain

9    "objective standards," <u>see id.</u>, against which the agency's decision could be evaluated.

10          By contrast, a claim for unreasonable delay of agency action is, as discussed later

11   herein, evaluated under a set of factors set forth in <u>Telecommunications Research &</u>

12   <u>Action Ctr. v. FCC</u>, 750 F.2d 70 (D.C. Cir. 1984) ("<u>TRAC</u> factors"), none of which is

13   dispositive, and only one of which relates to whether a particular timetable is provided.

14   <u>See TRAC</u>, 750 F.2d at 79-80; <u>see also</u> <u>In re Pesticide Action Network N. Am., Nat. Res.</u>

15   <u>Def. Council, Inc.</u>, 798 F.3d 809, 813 (9th Cir. 2015) (analyzing APA unreasonable delay

16   claim under <u>TRAC</u> factors).  As a result, "[t]he absence of any standard upon which to

17   frame a timing requirement is not unusual in APA unreasonable delay cases."  <u>See</u>

18   <u>Motaghedi</u>, 2020 WL 207155 at *7.

19          Accordingly, the Court finds review of plaintiffs' claims is not precluded by the fact

20   they challenge implementation of PP 9645.

21                          **(ii) Private Right of Action**

22          Defendants also argue PP 9645 does not create privately enforceable rights and,

23   consequently, that there is no claim to review.  In support thereof, defendants first point to

24   a provision in PP 9645 that states PP 9645 "is not intended to, and does not, create any

25   right or benefit, substantive or procedural, enforceable at law or in equity by any party

26   against the United States, its departments, agencies, or entities, its officers, employees,

27   or agents, or any other person."  <u>See</u> PP 9645 § 9(c).  As multiple courts addressing

28   similar claims have noted, however, such plaintiffs are not seeking to enforce rights

United States District Court
Northern District of California

7

1   created by PP 9645 but rather to enforce compliance with the requirements of the APA.

2   See, e.g., Najafi v. Pompeo, 19-cv-5782-KAW, 2020 WL 1067015, at *3 (holding plaintiffs

3   "seek enforcement not through PP 9645, but through the APA").

4       Defendants next argue that, as a general rule, "there is no private right of action to

5   enforce obligations imposed on executive branch officials by executive orders."  See Chai

6   v. Carroll, 48 F.3d 1331, 1338 (4th Cir. 1995).  One exception to such general rule,

7   however, is that an "executive order is privately enforceable . . . if it is issued pursuant to

8   a statutory mandate or delegation of congressional authority."  See Chai, 48 F.3d at

9   1338.  Here, as noted above, PP 9645 was issued pursuant to 8 U.S.C. § 1182(f).

10      Accordingly, the Court finds plaintiffs are not precluded from maintaining a private

11  right of action.  See, e.g., Motaghedi, 2020 WL 207155 at *6 ("[B]ecause PP 9645 was

12  issued pursuant to INA § 212(f), 8 U.S.C. § 1182, the Court again rejects Defendants'

13  argument that PP 9645 is not privately enforceable.").

14                      **(iii) 5 U.S.C. § 701(a)**

15      Defendants further contend the "APA does not permit review of waiver

16  determinations under 5 U.S.C. § 701."  (See Doc. No. 12 at 22:23.)

17      Judicial review under the APA is available "except to the extent that—(1) statutes

18  preclude judicial review; or (2) agency action is committed to agency discretion by law."

19  See 5 U.S.C. § 701(a).  Section 701 provides a "very narrow exception" that applies "in

20  those rare instances where statutes are drawn in such broad terms that in a given case

21  there is no law to apply."  See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S.

22  402, 410 (1971) (internal quotations and citations omitted), abrogated on other grounds

23  by Califano v. Sanders, 430 U.S. 99 (1977).

24      Here, defendants first contend "the Proclamation—a presidential action

25  implementing 8 U.S.C. 1182(f) and the only source of law that governs the waiver

26  process—expressly denies that it creates rights that can be enforced by private parties

27  through judicial review."  (See Doc. No. 12 at 22-26-28.)  As discussed above, however,

28  plaintiffs are not thereby precluded from maintaining a private right of action.  Moreover,

United States District Court
Northern District of California

1   PP 9645 is not a "statute," <u>see</u> 5 U.S.C. § 701(a)(1), and, as plaintiffs correctly note, 8

2   U.S.C. § 1182(f), the statute under which it was issued, "does not preclude APA review of

3   the PP 9645 waiver process."  (<u>See</u> Doc. No. 17 at 13:16-17.)

4        Next, defendants contend PP 9645 "expressly commits the grant or denial of

5   waivers to the *discretion* of consular and Customs and Border Protection officers" (<u>see</u>

6   Doc. No. 12 at 23:3-4 (emphasis in original)) and that such officers are not under a duty

7   "to act on a waiver application at all" (<u>see</u> <u>id.</u> at 24:25).  Plaintiffs, however, are not

8   challenging the denial of a waiver but rather defendants' delay and withholding of a

9   waiver decision, and, to the extent defendants contend consular officers have discretion

10   to not adjudicate waiver requests, such argument is, as set forth below, unpersuasive.

11        First, the "Operational Q&As on [PP] 9645" state "each applicant who is subject to

12   the restrictions" of PP 9645 "<u>must</u> be considered for a waiver" (<u>see</u> Mot. for Prelim. Inj.,

13   Doc. No. 7, Ex. 26 at 8 (emphasis added)), and, consistent therewith, the State

14   Department, in a letter responding to an inquiry from a United States senator, confirmed

15   that every applicant who is denied a visa under PP 9645 "must be considered for a

16   waiver" (<u>see</u> Doc. No. 7-28 at 2).  Further, "as several courts have recognized," <u>see</u>

17   <u>Motaghedi</u>, 2020 WL 207155, at *7, the Supreme Court's decision upholding the

18   constitutionality of PP 9645 "relied in part on the waiver program," <u>see</u> <u>id.</u> (discussing

19   <u>Trump v. Hawaii</u>, 138 S. Ct. 2392 (2018)).  For this Court to now hold "the waiver

20   program requires no decision would be to render [such program] illusory, negating one of

21   the bases for finding that PP 9645 was legal in the first place."  <u>See</u> <u>Najafi</u>, 2019 WL

22   6612222, at *5.  Accordingly, the Court finds defendants have "no discretion as to

23   whether they must review waiver eligibility in the first place."  <u>See</u> <u>Naghibolashrafi v.</u>

24   <u>Pompeo</u>, No. 19-cv-06602-NC, 2020 WL 1288409, at *3 (N.D. Cal. Mar. 18, 2020).

25        Nevertheless, defendants contend, as neither PP 9645 nor 8 U.S.C. § 1182(f) sets

26   a timetable for adjudicating waivers, there is "no law to apply" for the court to "determine

27   a mandatory timeframe for a waiver application decision."  (<u>See</u> Doc. No. 12 at 23:9-10.)

28   As discussed above, however, the "absence of any standard upon which to frame a

United States District Court
Northern District of California

9

timing requirement is not unusual in APA unreasonable delay cases," see Motaghedi,

2020 WL 207155 at *7, as such cases are evaluated under the TRAC factors, which

provide "meaningful standards and law to apply."  See Moghaddam v. Pompeo, 19-cv-

668-CKK, 2020 WL 364839, at *7 (D.D.C. Jan. 22, 2020) (holding Section 701(a) does

not preclude review of claim challenging delay of PP 9645 waiver adjudication).

Accordingly, the Court finds 5 U.S.C. § 701 does not preclude review of plaintiffs'

claims.

### (iv) Consular Nonreviewability

Lastly, defendants contend the doctrine of consular nonreviewability precludes

review of plaintiffs' claims.

The APA does not supersede "other limitations on judicial review," see 5 U.S.C.

§ 702, such as the doctrine of consular nonreviewability, see Allen v. Milas, 896 F.3d

1094, 1105 (9th Cir. 2018) (holding doctrine of consular nonreviewability is "precisely the

kind of limitation on judicial review . . . that forms an exception to the APA's cause of

action and review provisions" (internal quotation, citation, and alteration omitted).)  Under

that doctrine, a "consular official's decision to issue or withhold a visa is not subject either

to administrative or judicial review."  See Bustamante v. Mukasey, 531 F.3d 1059, 1061

(9th Cir. 2008).

Defendants assert consular nonreviewability "extends to not only the decision to

deny or grant, but also the timing of that decision." (See Doc. No. 12 at 24:23-24.)  None

of the cases cited by defendants in support of such proposition, however, concern a

challenge to the timing of any adjudication; rather, each involved a challenge to the denial

of a visa.  Indeed, contrary to defendants' argument, the Ninth Circuit has held claims

challenging a failure to adjudicate a visa application are not barred by consular

nonreviewability.  See Patel v. Reno, 134 F3d 929, 931-32 (holding "when the suit

challenges the authority of the consul to take or fail to take an action as opposed to a

decision taken within the consul's discretion, jurisdiction exists").  Here, as noted,

plaintiffs do not seek review of any denial of their waivers, which have yet to be

1    adjudicated, but instead challenge defendants' alleged failure to adjudicate their waiver

2    applications at all.  See, Najafi, 2019 WL 6612222, at *5 (holding "as Beneficiary Plaintiffs

3    are still *waiting* for a decision [on their PP 9645 waivers] by the consular officer, there is

4    no decision to review and thus consular nonreviewability is not at issue" (emphasis in

5    original)).

6         Accordingly, the Court finds the doctrine of consular nonreviewability does not

7    preclude review of plaintiffs' claims.

8         The Court next turns to the merits of plaintiffs' claims.

9                    **b. Merits of Plaintiffs' Claims**

10                   **(i) First Claim for Relief**

11         By their First Claim for Relief, plaintiffs, as noted, assert defendants have

12    unreasonably delayed the adjudication of their PP 9645 waivers.

13         Under the APA, agencies are required to conclude matters "within a reasonable

14   time," See 5 U.S.C. § 555(b), and the APA empowers courts to "compel agency action

15   . . . unreasonably delayed."  See id. § 706(1).  Where the agency has a "duty to act," see

16   In re A Community Voice, 878 F.3d 779, 784 (9th Cir. 2017) (holding claim for

17   unreasonable delay can succeed only if the agency is "under a duty to act"), courts, in

18   determining whether an agency has unreasonably delayed an administrative decision,

19   consider the following six factors:

20        (1) the time agencies take to make decisions must be governed by a rule of
          reason;

21

22        (2) where Congress has provided a timetable or other indication of the speed
          with which it expects the agency to proceed in the enabling statute, that
23        statutory scheme may supply content for this rule of reason;

24        (3) delays that might be reasonable in the sphere of economic regulation are
          less tolerable when human health and welfare are at stake;

25

26        (4) the court should consider the effect of expediting delayed action on agency
          activities of a higher or competing priority;

27
          (5) the court should also take into account the nature and extent of the interests
28        prejudiced by delay; and

11

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

See TRAC, 750 F.2d at 80 (internal quotations and citations omitted).  Although the first factor is the most important, no factor is determinative.  See In re A Community Voice, 878 F.3d at 786.

Here, as discussed above, defendants have a mandatory duty to adjudicate plaintiffs' PP 9645 waivers, and, consequently, the Court turns to the TRAC factors.

### [a] Rule of Reason

"The reasonableness determination is a fact-specific inquiry"; the "length of delay alone is not dispositive." Mugomoke v. Curda, No. 2:10-cv-02166-KJM-DAD, 2012 WL 113800, at *8 (E.D. Cal. Jan. 13, 2012).  Courts therefore "look[ ] to the source of the delay—e.g., the complexity of the investigation as well as the extent to which the defendant[s] participated in delaying the proceeding." Qureshi v. Napolitano, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012) (internal citations omitted).

Here, with regard to the length of the delay, plaintiffs, as noted, have waited between nineteen and thirty-two months for adjudication of their waivers.[2]  In the immigration context, however, "courts have generally found delays of four years or less not to be unreasonable," see Islam v. Heinauer, 32 F. Supp. 3d 1063, 1071-72 (N.D. Cal. 2014) (collecting cases wherein delayed adjudication of petitions for permanent residence status was considered).

Plaintiffs argue Islam is distinguishable on its facts, as it involved "terrorist-related determinations," see Islam, 32 F. Supp. 3d at 1071, as opposed to the public safety and national security determination required for PP 9645 waivers.  The "terrorist-related determinations" involved in Islam, which determinations required "a deliberative process

---

[2] Although defendants submit evidence that the longest any of the plaintiffs has waited is thirty months, rather than thirty-two months, any such differential is not material to the Court's analysis.

United States District Court
Northern District of California

between multiple government actors," see id., do not, however, appear to be meaningfully different from the public safety and national security determination under PP 9645, which entails coordination among multiple government agencies and is based, in great part, on a finding that Iran is "the source of significant terrorist threats," see PP 9645 § 2(b)(i).  Plaintiffs also contend Islam and the cases it collects are distinguishable on the basis that the plaintiffs in those cases were not "outside the United States, enduring family separation, or in danger due [to] the threat of war."  (See Doc. No. 17 at 3:4-5.)  Such considerations, however, are properly evaluated under two other factors, specifically, "human health and welfare" and "prejudice."  See Motaghedi, 2020 WL 2070155, at *10 (noting absence of "any case law showing that family separation could be considered in the 'rule of reason' factor for unreasonable delay'").

Moreover, of the cases involving the separation of Iranian family members and threat of war between Iran and the United States, one court has held a 32-month delay in the adjudication of PP 9645 waivers to be reasonable, see Kayvan v. Pompeo, 19-cv-8071-EJD, Order Granting Motion to Dismiss, Doc. No. 37-1 at 14-15 (N.D. Cal. July 28, 2020),[3] and three others have held approximately two-year delays of PP 9645 waiver adjudications to be reasonable. See, e.g., Darchini v. Pompeo, No. 19-cv-1417-JVS, 2020 WL 3051089, at *2 (C.D. Cal. Mar. 18, 2020) (25-month delay); Bagherian v. Pompeo, 19-cv-1049-JDB, 2020 WL 674778, at *4 (D.D.C. Feb. 11, 2020) (same); see also Didban v. Pompeo, 19-cv-881-CRC, 2020 WL 224517, at *6 (D.D.C. Jan. 15, 2020) (24-month delay).  The Court has found no such case holding to the contrary, and, as set forth below, finds, for much the same reasons as expressed in the above-cited cases, the time plaintiffs have waited is not unreasonable.[4]

---

[3] In Kayvan, the plaintiffs alleged that, as of the filing of their complaint on December 10, 2019, their PP 9645 waiver applications had been pending for 733 days, and, consequently, as of July 28, 2020, the date of the court's order granting the defendants' motion to dismiss, the plaintiffs' waiver applications had been pending 971 days, a little more than thirty-two months.

[4] Doe v. Risch, 398 F. Supp. 3d 647 (N.D. Cal. 2019), on which plaintiffs rely, is distinguishable on its facts.  See id. at 656-59 (holding two-and-a-half-year delay in

United States District Court
Northern District of California

In particular, as defendants note, the purpose behind PP 9645 is to reduce the risk of dangerous individuals entering the United States, and, consequently, thorough national security vetting of the thousands of pending waiver applications is "critical to achiev[ing] a fundamental purpose of the Proclamation."  (See Doc. No. 12 at 14:8.)  Such vetting requires an "interagency security review" (see Doc. No. 1-3 (Congressional Testimony of Edward Ramotowski, Deputy Assistant Secretary, Bureau of Consular Affairs) at 3), and, as defendants point out, it "may be more difficult and time consuming for the Beneficiary Plaintiffs here because, as the Presidential Proclamation explains, Iran does not adequately provide public-safety and terrorism-related information" (see Doc. No. 12 at 13:14-16).

Plaintiffs do not contest the national security purpose behind PP 9645 but argue the length of time they have waited is nonetheless unreasonable because defendants, according to plaintiffs, have conceded waiver adjudications can be completed in "one business day."  (See Doc. No. 7 at 20:5.)  The documents plaintiffs cite in support of this assertion, however, state only that "[i]n urgent cases, a response from the Visa Office can be provided within one business day, provided the Visa Office has all the information needed."  (See Doc. No. 7-23 at 1; Doc. No. 7-24 at 1.)  There is no elaboration as to what might constitute an "urgent case," or what comprises "all the information needed," and, consequently, such evidence is insufficient to support a finding that the waivers at issue here can be adjudicated in one business day.  See Najafi, 2019 WL 6612222, at *7 (finding documents submitted do "not suggest that waiver considerations can in fact be completed in one businesses day").

Plaintiffs also contend that, as defendants have implemented "enhanced automated front-end (pre-interview) screening" for PP 9645 national security vetting (see

_____

completing "typical" FBI background check for derivative asylum application unreasonable, given simple nature of process, 180-day congressional timetable, lack of information regarding number of other applicants, and district court cases holding more than two years to complete FBI background check unreasonable as matter of law).

1   Doc. No. 7 at 20:5-8), the delay of plaintiffs' waiver adjudications is unreasonable.  As

2   plaintiffs themselves note, however, such screening "is used to determine whether an

3   additional security analysis is warranted for waiver considerations" (see id. at 20:10-11).

4   "Terrorist-related determinations involving immigrant applicants are not made lightly and

5   may be time-consuming," see Najafi, 2019 WL 6612222, at *6, and plaintiffs submit no

6   evidence that "additional security analysis" is unnecessary in their cases.

7        Accordingly, after considering the length and source of the delay, the Court finds

8   the first TRAC factor weighs against injunctive relief.

9   **[b] Timetable**

10        As to the second TRAC factor, it is undisputed that PP 9645 does not contain a

11   timetable for adjudicating waiver requests.  Accordingly, the Court finds the second factor

12   weighs neither in favor of nor against injunctive relief.  See Najafi, 2019 WL 6612222, at

13   *7 (holding second TRAC factor "neutral" because "the plain language of PP 9645

14   creates no timing requirement").

15   **[c] Human Health and Welfare/Prejudice**

16        The third and fifth TRAC factors, namely, whether "human health and welfare are

17   at stake" and "the nature and extent of the interests prejudiced by delay," see TRAC, 750

18   F.2d at 80, are generally analyzed together, see Islam , 32 F. Supp. 3d at 1071-72.

19        Here, plaintiffs have submitted evidence that the family separation caused by

20   defendants' alleged delay in adjudicating their waivers has caused them substantial

21   hardship, including "the anxiety of having a marriage on hold, the inability for adult

22   parents to care for their elderly parents, [and] the impossibility of grandparents having a

23   role in the lives of their grandchildren." (See Doc. No. 7 at 15:1-2; see also Doc. Nos. 7-

24   1, 7-2, 7-3, 7-4 (detailing effects of family separation).)   Additionally, plaintiffs have

25   submitted evidence that escalating tension between the United States and Iran has

26   caused plaintiffs to fear for the safety and wellbeing of their Iranian national relatives

27   waiting for waiver adjudications.  (See id.)

28        Defendants "acknowledge the personal challenges facing the [p]laintiffs" (see Doc.

United States District Court
Northern District of California

1   No. 12 at 16:19-20) but argue it is "'entirely speculative' whether an injunction would

2   'result in plaintiffs' admission to the United States,' as 'denial is a possibility'" (see id. at

3   16:26-27 (quoting Darchini v. Pompeo, No. 19-cv-1417-JVS, 2019 WL 6841991, at *6

4   (C.D. Cal. Sept. 24, 2019)). While recognizing the potential for an adverse determination,

5   the Court finds "[p]laintiffs' interests in being reunited with their families" and obtaining "at

6   least a final determination on their [PP 9645 waiver] application so as to end a stressful

7   waiting period" are significant and prejudiced by the delay. See Motaghedi, 2020 WL

8   207155, at * 12 (holding third and fifth TRAC factors favored plaintiffs seeking PP 9645

9   waivers).

10          Accordingly, the Court finds the third and fifth TRAC factors weigh in favor of

11   injunctive relief.

12                          **[d] Competing Priorities**

13          The fourth TRAC factor, as noted, concerns "the effect of expediting delayed

14   action on agency activities of a higher or competing priority." See TRAC, 750 F.2d at 80.

15          In that regard, the Court, in weighing plaintiffs' interest in a speedy adjudication

16   against defendants' interest in "maintaining the rigorous nature of the security review"

17   (see Doc. No. 1-3 at 3), finds, at least on the record presently before the Court, the latter

18   weighs more heavily in the balance. "[N]ational security concerns constitute the stated

19   purpose for the proclamation," see Yavari v. Pompeo, 19-cv-2524-SVW, 2019 WL

20   6720995, at *8 (C.D. Cal. Oct. 10, 2019), and, as noted above, PP 9645 rests on findings

21   that Iran "regularly fails to cooperate with the United States Government in identifying

22   security risks" and "is the source of significant terrorist threats." See PP 9645 § 2(b)(i).

23          Next, the Court notes that, as of March 31, 2020, approximately 13,800 waiver

24   applicants await a determination as to whether their entry would pose a threat to national

25   security and public safety. (See Doc. No. 23-2 at 3; see also Doc. No. 24-1 at 3.)

26   Plaintiffs submit no evidence that they are being treated differently than other waiver

27   applicants. Consequently, an order compelling defendants to adjudicate plaintiffs' waiver

28   applications as requested would "merely pull government resources from the adjudication

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    of other applicants' waiver eligibility," see Bagherian, 2020 WL 674778, at *6, effectively

2    putting plaintiffs "at the head of the queue," while "mov[ing] all others back one space and

3    produc[ing] no net gain," see In re Barr Labs, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991).

4        Although plaintiffs argue "the adjudication of waiver applications does not occur in

5    any sequential order" and that "there is no queue" (see Doc. No. 7 at 23:7-8), there is no

6    dispute that thousands of other waiver applicants await national security determinations,

7    and, according to an exhibit plaintiffs attach to their complaint, the State Department has

8    "worked closely with consular officers in the field to identify and expedite processing of

9    the most urgent [PP 9645 waiver] cases" (see Doc. No. 1-3 at 3).  The Court has "no

10   basis for reordering [such] agency priorities" by requiring defendants to adjudicate

11   plaintiffs' waivers on an expedited basis.  See In re Barr Labs, Inc., 930 F.2d at 76.

12       Lastly, the Court finds unpersuasive plaintiffs' argument that defendants "have

13   abandoned all pretense of competing priorities, by prioritizing only a blanket preclusion of

14   entry with little acknowledgment that the interests of the parties to a waiver adjudication,

15   such as the plaintiffs, are priorities at all."  (See id. at 22:25-23:2.)  According to a State

16   Department report submitted by plaintiffs, over 22,000 visas have been issued pursuant

17   to PP 9645 waivers as of March 31, 2020, including nearly 7000 visas for Iranian

18   nationals.  (See Doc. No. 24-1 at 3.)

19       Accordingly, the Court finds the fourth TRAC factor weighs against injunctive relief.

20                                **[e] Impropriety**

21       As to the sixth TRAC factor, whether there is any impropriety behind the delay,

22   plaintiffs do not assert any such impropriety exists, and the parties agree this factor is

23   neutral.  (See Doc. No. 17 at 5:7-8.)

24                    **[f] Conclusion as to TRAC Factors**

25       In sum, after weighing the relevant factors, and in light of the Ninth Circuit's

26   guidance that the first such factor is the most important, see In re A Community Voice,

27   878 F.3d at 786, the Court finds plaintiffs have failed to show the length of time they have

28   waited for adjudication of their waiver applications is unreasonable.  Although the

1  hardships faced by plaintiffs are substantial, such concerns are outweighed by the

2  significant national security interests and complex vetting process involved in plaintiffs'

3  waiver determinations, as well as the nearly fourteen-thousand pending waiver

4  applications likewise awaiting adjudication.

5       Accordingly, the Court finds plaintiffs have failed to demonstrate a likelihood of

6  success on the merits of their First Claim for Relief.  Assuming plaintiffs have raised

7  serious questions going to the merits of said claim, the Court addresses later herein the

8  additional requirements for injunctive relief.

9                          **(ii) Second Claim for Relief**

10      As noted, PP 9645 states "a consular officer, or the Commissioner, United States

11  Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate,

12  may, in their discretion, grant waivers on a case-by-case basis."  See PP 9645 § 3(c).

13      Plaintiffs contend that, under this provision, only consular officers or the

14  Commissioner or his designee(s) may adjudicate waivers, and that defendants have

15  improperly "extended [such] authority and discretion . . . [to] consular managers, visa

16  chiefs, consular section chiefs, and/or consular management and the Visa Office, and

17  Quality Support, Inc. contractors."  (See Compl. ¶ 63.)  Specifically, plaintiffs assert,

18  consular officers, before issuing a waiver, must obtain the "concur[rence]" of such

19  unauthorized officers and entities, thereby "strip[ping] the discretion of consular officers to

20  approve waivers."  (See Doc. No. 7 at 10:13.)

21      In support of this claim, plaintiffs submit a declaration in which a former consular

22  officer states consular officers "were mandated to send notice to Washington that [a

23  consular officer] found [an] applicant eligible to apply and Washington would then make

24  the decision to grant or deny the [PP 9645] waiver."  (See Doc. No. 7-5 ¶ 11(b).)  In

25  another declaration, three former consular officers state "consular officers essentially

26  make a recommendation as to an applicant's eligibility for a waiver, with the final

27  determination made by an opaque grouping of officers in Washington."  (See Doc. No. 7-

28  6 ¶ 7.)

United States District Court
Northern District of California

Further, plaintiffs again point to the earlier-referenced letter from the State Department to a United States senator (see Doc. No. 7-28 at 2 (stating "[i]f the consular officer determines, after consultation with the Visa Office, that an applicant does not pose a threat to national security or public safety and the other two [waiver] requirements have been met, a visa may be issued with the concurrence of a consular manager")), as well as the earlier-referenced internal State Department guidance (see Doc. No. 25 at 7 (stating consular officers are permitted to grant waivers "with the concurrence of the visa chief (NIV or IV) or consular section chief"); see also id. at 6 (stating "[i]f the Visa Office concurs that a waiver may be justified, then post[5] should determine if the national security/public safety requirement is met")), and emails exchanged between consular officers and the Visa Office (see Doc. No. 7:35 at 8, 9 (requesting "approval" for waiver requests); see also id. at 1 (stating "[t]he Visa Office concurs with post's assessment of eligibility under the first two prongs (undue hardship and national interest) of the PP 9645 waiver process")).

As defendants note at the outset, however, defendants argue PP 9645 does not define "consular officer," nor does it limit such role to rank-and-file officers or "prohibit oversight or assistance from other managers or supervisors."  (See Doc. No. 12 at 18:11-13.)  Further, the Immigration and Naturalization Act ("INA") defines "consular officer" as "any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas," see 8 U.S.C. § 1101(a)(9), which regulations define the term consular officer as "includ[ing] commissioned consular officers and the Deputy Assistant Secretary for Visa Services, and such other officers as the Deputy Assistant Secretary may designate for the purpose of issuing nonimmigrant and immigrant visas," see 22 C.F.R. § 40.1(d).

Although plaintiffs contend defendants "offer no evidence that the litany of people

_____

[5] The Court understands "post" to be a reference to consular officers.

United States District Court
Northern District of California

1    who must sign off before a waiver is issued were ever designated under their own

2    regulations" (see Doc. No. 17 at 8:4-5), the burden is on plaintiffs to show the law clearly

3    favors their position, and plaintiffs have failed to submit any evidence to show the above-

4    quoted, and relatively broad, statutory and regulatory definitions of consular officer do not

5    include consular managers, consular section chiefs, visa chiefs, or Visa Office

6    employees.  See Motaghedi, 2020 WL 207155, at *14 (finding, in light of INA's definition

7    of consular officer, "[p]laintiffs [had] not met their burden in establishing a likelihood of

8    success that PP 9645 does not allow for the concurrence of consular managers or visa

9    chiefs in adjudicating waivers").

10       In any event, even if the above-listed individuals do not fall within the definition of

11   consular officer and even if their concurrence is required, the Court finds their exact role

12   in the waiver adjudication process, and the extent to which consular officers maintain

13   discretion to grant or deny waivers, has not been made clear by plaintiffs.  As noted, PP

14   9645 envisions interagency coordination, see PP 9645 § 3(c) (providing "[t]he Secretary

15   of State and the Secretary of Homeland Security shall coordinate to adopt guidance

16   addressing the circumstances in which waivers may be appropriate"), and, of the three

17   former officers who state they were stripped of their discretion to make final waiver

18   determinations, only one worked at the State Department in the period after PP 9645

19   went into effect, and that officer resigned just three months later, i.e., over two years ago.

20       Indeed, other evidence submitted by plaintiffs suggests the involvement of other

21   individuals or entities is for the purpose of coordination and information sharing, with the

22   ultimate waiver determination resting with the consular officer.  In particular, the Visa

23   Office, in response to a question from the American Immigration Lawyers Association,

24   explained "the national security and public safety assessment is made by the consular

25   officer and involves extensive interagency coordination."  (See Doc. No. 7-31 at 4.)

26   Additionally, and consistent therewith, the Deputy Assistant Secretary of the Bureau of

27   Consular Affairs explained to Congress that the "interagency security review" is

28   conducted "to provide consular officers information on whether or not the applicant's

1    entry into the United States would pose a threat to national security or public safety."

2    (See Doc. No. 1-3 at 3.; see also Doc. No. 1-2 (Decl. of Joel Nantis, Director for Domestic

3    Operations of the Visa Office) ¶ 28 (stating a "consular officer may also . . . request Visa

4    Office coordination to obtain screening and vetting information from interagency

5    partners").)

6           Similarly, although there is no argument that contractors such as Quality Support,

7    Inc. come within the definition of consular officer, plaintiffs fail to submit evidence

8    sufficient to show such contractors are making final waiver determinations.  The only

9    evidence plaintiffs submit in support of such contention is an email sent by Quality

10   Support, Inc. with the subject line "Follow up on PP9645 Waiver SAOs – EO17 Refusals

11   for Syrian IVO Cases,"[6] wherein said contractor states "we've sent today refusals under

12   EO17 for the following PP Waiver SAOs back to post" (see Doc. No. 1-1 at 2), the import

13   of which is, in the absence of context or supporting evidence, unclear.  There is nothing

14   to clarify, for example, whether the "refusals" referenced therein constitute final directives

15   to consular officers as opposed to evaluations transmitted for such officers' consideration.

16          Accordingly, the Court finds plaintiffs have failed to demonstrate a likelihood of

17   success on the merits of their Second Claim for Relief.  Again assuming plaintiffs have

18   raised serious questions going to the merits of said claim, the Court addresses below the

19   additional requirements for injunctive relief.

20          **2. Irreparable Injury**

21          Plaintiffs have the burden of demonstrating a likelihood of irreparable injury absent

22   preliminary relief.  See Winter, 555 U.S. at 20.  In that regard, plaintiffs have submitted

23   the above-discussed evidence that the separation caused by defendants' alleged delay in

24   adjudicating their waivers has caused and continues to cause them significant hardship,

25   and they have also submitted evidence showing such separation "obstructs [their] ability

26

27          [6] An SAO is a security advisory opinion (see Doc. No. 1-3 at 3); EO17 is the
     "refusal code" used in visa software "in order to distinguish refusals made . . . on PP 9645

28   grounds."  (See Doc. No. 1-2 ¶ 29.)

to make appropriately informed life decisions like whether they should be pursuing third countries to legally reside and work [in]" (see Doc. No. 7 at 16:3-5), none of which is compensable under the APA, see 5 U.S.C. § 702 (providing for relief "other than money damages").

In response, defendants note any such family separation "has existed for a long period, predating the Presidential Proclamation," and argue plaintiffs "do not explain how it will imminently change for the worse" (see Doc. No. 12 at 20:6-7.)  As other courts addressing this issue have observed, defendants' argument is "severely misguided." See Motaghedi, 2020 WL 207155, at *14.  Regardless of how long plaintiffs have already been waiting, every additional day of family separation, with the hardship it entails, is a loss that cannot be compensated, and, although there is no guarantee a waiver would be granted upon adjudication, an injunction would abate the component of harm caused by the extended waiting itself.

Accordingly, the Court finds plaintiffs have demonstrated a likelihood of irreparable injury.

### 3. Balance of Equities and Public Interest

A party seeking a preliminary injunction must demonstrate that "the balance of equities tips in [its] favor, and that an injunction is in the public interest."  See Winter, 555 U.S. at 20.  "These factors merge when the Government is the opposing party."  See Nken v. Holder, 556 U.S. 418, 435 (2009).

Plaintiffs characterize the relief they seek as a "modest injunction" (see Doc. No. 7 at 23:23) and argue an order affording forty-five days to adjudicate their waivers "minimizes the burden on the [d]efendants" (see id. at 24:3) while supporting the public interest in "maintaining timely and lawful consideration" of PP 9645 waivers (see Doc. No. 17 at 11:9-10).  In light of the significant national security issues at stake, however, the Court is not convinced that requiring defendants to act on plaintiffs' waiver applications within forty-five days constitutes modest relief or a meaningfully minimized burden such that the balance of equities tips in plaintiffs' favor, let alone shown the "balance of

United States District Court
Northern District of California

1    hardships tips sharply in [their] favor."  See Alliance for the Wild Rockies, 632 F.3d at

2    1135.  Indeed, as discussed above, the relief plaintiffs seek would put their applications

3    ahead of those filed by the thousands of other waiver applicants, any number of which

4    may be more compelling than plaintiffs'.

5          Accordingly, the Court finds the balance of equities and public interest do not favor

6    issuance of the injunction sought by plaintiffs.

7          **4. Conclusion as to Motion for Preliminary Injunction**

8          For the reasons stated above, the Court finds plaintiffs have failed to show they

9    are entitled to a preliminary injunction.  Accordingly, although the Court urges defendants

10   to evaluate plaintiffs' waiver eligibility as swiftly as possible, plaintiffs' motion for

11   preliminary injunction will be denied.

12         The Court next turns to defendants' motion to dismiss.

13   **B. Motion to Dismiss**

14         By their motion to dismiss, defendants seek, pursuant Rules 12(b)(1) and 12(b)(6)

15   of the Federal Rules of Civil Procedure, dismissal of plaintiffs' complaint in its entirety.

16         **1. Subject Matter Jurisdiction Under Rule 12(b)(1)**

17         Defendants contend the Court lacks jurisdiction to review plaintiffs' claims, based

18   on the same grounds they raised in opposition to plaintiffs' motion for preliminary

19   injunction, specifically, their contention that (1) presidential action, such as PP 9645, is

20   not subject to review under the APA, (2) PP 9645 does not create any privately

21   enforceable rights, (3) review is precluded by 5 U.S.C. § 701(a), and (4) review is

22   precluded by the doctrine of consular nonreviewability.

23         For the reasons discussed in detail above, the Court finds those arguments

24   unpersuasive and, accordingly, finds it has jurisdiction to review plaintiffs' claims.

25         **2. Failure to State a Claim Under Rule 12(b)(6)**

26              **a. Legal Standard**

27         Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

28   based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

### b. First Claim for Relief

Plaintiffs' First Claim for Relief, whereby plaintiffs allege defendants have unreasonably delayed the adjudication of their PP 9645 waivers, is, as noted above, evaluated under the six TRAC factors, see TRAC, 750 F.2d at 80, and, in the context of plaintiffs' motion for preliminary injunction, the Court has found those factors weigh in favor of defendants.

In considering whether such claim survives a motion to dismiss, several district courts, as plaintiffs point out, have concluded use of the "fact-specific [TRAC factor] inquiry" at the "motion to dismiss stage" is "premature." See Moghaddam, 2020 WL 364839, at *7 (denying motion to dismiss; declining to undertake TRAC factor inquiry);

United States District Court
Northern District of California

Thomas v. Pompeo, No. 19-cv-1050-ESH, 2020 WL 601788, at *6 (D.D.C. Feb. 7, 2020) (same); see also Motaghedi v. Pompeo, No. 19-cv-1466-LJO, 2020 WL 489198 at *11-12 (E.D. Cal. Jan. 30, 2020) (denying motion to dismiss; declining to undertake TRAC factor inquiry as to first and fourth factors).

Plaintiffs urge the Court to follow those decisions, and argue "[f]urther development of the record through normal discovery will show even further information about the waiver process that the court needs to make final determinations." (See Doc. No. 24 at 17:12-13.) Plaintiffs fail, however, to identify what "further information" the Court needs in order to make a decision, and the majority of district courts that have addressed claims for unreasonable delay of PP 9645 waiver adjudications have undertaken the TRAC factor inquiry at the motion to dismiss stage. See Bagherian, 2020 WL 674778, at *6 (granting motion to dismiss after conducting TRAC factor analysis); Darchini, 2020 WL 3051089, at *6 (same); Didban, 2020 WL 224517, at *6 (same); Naghibolashrafi, 2020 WL 1288409, at *5 (same); Yavari, 2019 WL 6720995, at *8 (same); Kayvan, 19-cv-8071-EJD, Order Granting Motion to Dismiss, Doc. No. 37-1 at 13-14 (same).

As with the weight of authority, the Court finds it appropriate to conduct the TRAC factor inquiry at this stage of the proceedings, and the Court's conclusion that those factors weigh in favor of defendants remains unchanged.[7]

Accordingly, plaintiffs' First Claim for Relief will be dismissed without prejudice to refiling at a later date.

### c. Second Claim for Relief

In their Second Claim for Relief, plaintiffs allege defendants have failed to observe procedure required by law and have also acted arbitrarily and capriciously, all in violation

---

[7] Although, in support of their opposition to plaintiffs' motion, defendants submitted a declaration and documents that are not before the Court in connection with the motion to dismiss, the Court, in analyzing the TRAC factors for purposes of determining plaintiffs' entitlement to injunctive relief, did not rely on those exhibits.

of 5 U.S.C. §§ 706(2)(A)&(D).

As noted above, under PP 9645, a "consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis."  See PP 9645 § 3(c).  According to plaintiffs, as "PP 9645 was silent as to any authority or discretion placed with consular managers, visa chiefs, consular section chiefs, and consular management and [the] Visa Office to adjudicate case-by-case waivers, . . . their required concurrence is unlawful."  (See Compl. ¶ 109.)

Plaintiffs have failed, however, to plead facts sufficient to show such officers and entities are not "consular officers," as defined by the INA and its regulations.  See 8 U.S.C. § 1101(a)(9) (defining consular officer as "any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas"); 22 C.F.R. § 40.1(d) (stating the term consular officer "includes commissioned consular officers and the Deputy Assistant Secretary for Visa Services, and such other officers as the Deputy Assistant Secretary may designate for the purpose of issuing nonimmigrant and immigrant visas").

Next, plaintiffs allege that, in the email from Quality Support, Inc. discussed earlier herein, "Visa Analyst Contractor Kunduz Jenkins, informed Visa Office employees, 'we've sent today refusals under EO 17 [the refusal code for PP 9645 refusals] for the following PP Waiver [Security Advisory Opinions] back to post: [redaction information] Please let us know if you have any questions.'"  (See Compl. ¶ 74 (alterations in original).)  Based thereon, plaintiffs assert defendants have "designat[ed] a Quality Support, Inc. contractor to issue approvals and refusals of security advisory opinions, the national security and public safety prong of a waiver adjudication" (see id. ¶ 108), and that such designation "is an appointment of the Quality Support, Inc. contractor as designee to the consular officer, which is unlawful as it was not authorized by PP 9645" (see id.).

As discussed above, however, the import of such email is unclear.  Consequently,

without more, any effort to define its meaning is, in essence, speculation, and thus insufficient to support a plausible claim.

Plaintiffs further allege defendants have acted arbitrarily by not "using the enhanced automated screening and vetting process to adjudicate [plaintiffs'] waivers." (See Compl. ¶ 114.)  PP 9645, however, does not require the use of any such automated system, and, as the enhanced automated screening "occurs prior to the interview" (see id.), plaintiffs, who have already attended their consular interviews, fail to plausibly allege how a failure to use such screening in their cases is "arbitrary, capricious, [or] an abuse of discretion."  See 5 U.S.C. § 706(2)(A); see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (holding "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency").

Lastly, plaintiffs allege defendants have acted arbitrarily by "develop[ing] inconsistent guidance that leads to a waiver adjudication scheme" that "places visa applicants, including [p]laintiffs, in a perpetual loop of administrative processing."  (See Compl. ¶ 121.)  According to a State Department report attached to plaintiffs' complaint, however, over 17,500 visas, as of December 31, 2019, had been issued pursuant to PP 9645 waivers, including 4837 visas to Iranian nationals (see Doc. No. 1-4 at 2), and subsequent data shows waivers have continued to be processed (see Doc. No. 24-1 at 3 (reporting that, as of March 31, 2020, over 22,000 visas have been issued pursuant to PP 9645 waivers, including nearly 7000 visas for Iranian nationals)).  In light of such data, the Court finds plaintiffs' conclusory allegation that visa applicants are caught in a "perpetual loop of administrative processing" (see Compl. ¶ 121) lacks adequate factual support.

Accordingly, plaintiffs' Second Claim for Relief will be dismissed.

### d. Third Claim for Relief

Plaintiffs' Third Claim for Relief, whereby plaintiffs seek a writ of mandamus, is based on the same grounds as plaintiffs' First and Second Claims for Relief, i.e.,

1    unreasonable delay and usurpation of consular officer authority.

2         "Mandamus is an extraordinary remedy and is available to compel a federal official

3    to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's

4    duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt,

5    and (3) no other adequate remedy is available."  See Kildare v. Saenz, 325 F.3d 1078,

6    1084 (9th Cir. 2003).

7         Here, as plaintiffs' mandamus claim is derivative of its first two claims, it fails for

8    the same reasons those claims fail.  In addition, although defendants have a clear,

9    nondiscretionary duty to adjudicate PP 9645 waivers, plaintiffs have failed to plead facts

10   sufficient to support a finding that "the Government owes them a clear nondiscretionary

11   duty to adjudicate their wavier requests within a fixed time, to have the review conducted

12   solely by a consular officer without delegating the labor to others, or to conduct the

13   review through the enhanced automated screening process."  See Kayvan, 19-cv-8071-

14   EJD, Order Granting Motion to Dismiss, Doc. No. 37-1 at 19:7-10.)

15        Accordingly, plaintiffs' Third Claim for Relief will be dismissed.

16              **e. Fourth Claim for Relief**

17        In their Fourth Claim for Relief, plaintiffs assert their procedural due process rights

18   have been violated by defendants' "unreasonable administrative delays" (see Compl.

19   ¶ 128), "unlawful designation [of] authority and discretion to consular managers to

20   adjudicate . . . [p]laintiffs' waivers" (see id. ¶ 129), and failure to use their "new enhanced

21   automated screening and vetting process" (see id. ¶ 131).

22        The Fifth Amendment provides that "[n]o person shall be . . . deprived of life,

23   liberty, or property, without due process of law."  See U.S. Const. amend. V.   "To bring a

24   successful procedural due process claim, a plaintiff must point to (1) the deprivation of a

25   constitutionally protected liberty or property interest, and (2) the denial of adequate

26   procedural protections."  See Gebhardt v. Nielsen, 879 F.3d 980, 988 (9th Cir. 2018)

27   (internal quotation omitted).  For the reasons set forth below, the Court finds plaintiffs

28   have failed to plausibly allege the deprivation of any constitutionally protected liberty or

United States District Court
Northern District of California

property interest, and, consequently, their claim is subject to dismissal.

First, plaintiffs allege they have been deprived of their right to the "integrity of the family unit," including "a cognizable liberty interest in their family members' ability to travel to the United States." (See Compl. ¶ 124.) The Ninth Circuit has held, however, that "the generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members," see Gebhardt, 879 F.3d at 988; see also Morales-Izquierdo v. Dep't of Homeland Sec., 600 F.3d 1076, 1091 (9th Cir. 2010) (holding Constitution does not provide "a fundamental right to reside in the United States simply because other members of [one's] family are citizens or lawful permanent residents"), overruled in part on other grounds by Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir. 2012) (en banc),[8] and beneficiary and derivative plaintiffs, as "unadmitted and nonresident alien[s], ha[ve] no constitutional right of entry to this country as a nonimmigrant or otherwise," see Kleindienst v. Mandel, 408 U.S. 753, 762 (1972).

Next, plaintiffs allege agency-created "regulatory rights related to the petitioning and issuance of visas" (see id. ¶ 126) and congressionally created "statutory rights and prescribed procedures applicable to prospective immigrants and non-immigrants" give rise to "cognizable liberty and property interests for both Petitioner and Beneficiary Plaintiffs" (see id. ¶ 125), including "reliance interests on the basis of which [p]laintiffs have spent significant resources" (see id.; see also Id. ¶ 90 (alleging plaintiffs have "faced severe economic hardship" in the form of "the costs of visiting each other as a substitute for reunification")).

It is undisputed that statutory rights may create liberty and property interests

_____

[8] In their Complaint, although not in their opposition, plaintiffs cite Bustamante v. Mukasey, 531 F.3d 1059 (9th Cir. 2008), as support for their alleged "liberty interest in their family members' ability to travel to the United States." (See Compl. ¶ 124.) In Din v. Kerry, 718 F.3d 856 (9th Cir. 2013), vacated on other grounds by Kerry v. Din, 576 U.S. 86 (2015), the Ninth Circuit appears to distinguish Bustamante, see id. at 860 n.1 (noting "nowhere does [Bustamante] mention the right of an alien spouse to live in the United States") and, consequently, rejected the government's argument that Bustamante is "in conflict with Circuit precedent," see id. Irrespective of how the holding in Bustamante is characterized, however, the Court finds said decision does not govern the instant claim.

United States District Court
Northern District of California

1    protected by procedural due process.  See Wolff v. McDonnell, 418 U.S. 539, 556-58

2    (1974) (holding "a person's liberty is equally protected [by due process], even when the

3    liberty itself is a statutory creation of the State"); Goldberg v. Kelly, 397 U.S. 254, 262

4    (1970) (holding welfare benefits are "statutory entitlement" giving rise to constitutionally

5    protected property interest).  In reliance thereon, plaintiffs allege defendants, by delaying

6    adjudication of their waivers, "have deprived [them] of the opportunity to show that they

7    meet the eligibility criteria for visa categories for which they or their family members are

8    eligible by statute."  (See Compl. ¶ 130.)  Plaintiffs fail, however, to identify any statutory

9    provision creating rights of which they allegedly have been denied, and aside from such

10   failure, have, by their own allegations, essentially conceded the adjudication of waivers

11   comes after, not before, a visa applicant meets the statutory eligibility requirements.

12   (See id. ¶ 70 (describing visa application and waiver procedures).)  Plaintiffs thus fail to

13   support their conclusory allegation that they have been deprived "of even the most

14   minimal process that attaches to the statutory benefits conferred on them by Congress."

15   (See Compl. ¶ 130); see also Iqbal, 556 U.S. at 678 (holding courts "are not bound to

16   accept as true a legal conclusion couched as a factual allegation").

17           As to "regulatory rights," the waiver adjudication process is governed by PP 9645,

18   which expressly disclaims the creation of any rights.  See PP 9645 § 9(c) (stating PP

19   9645 "is not intended to, and does not, create any right or benefit, substantive or

20   procedural, enforceable at law or in equity by any party").  Moreover, even if PP 9645 did

21   create regulatory rights, plaintiffs' claim nonetheless would fail, as the decision

22   whether to grant or deny a waiver is discretionary.  See Munoz v. Ashcroft, 339 F.3d 950,

23   954 (9th Cir. 2003) (holding "[s]ince discretionary relief is a privilege created by

24   Congress, denial of such relief cannot violate a substantive interest protected by the Due

25   Process Clause").

26           Lastly, plaintiffs contend their alleging "reliance interests on the basis of which

27   [p]laintiffs have spent significant resources" (see Compl. ¶ 125) is sufficient to plead a

28   protected property interest.  Plaintiffs cite no authority, however, for the proposition that a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    voluntary expenditure while awaiting a governmental decision creates a constitutionally

2    protected property interest, and existing case law suggests to the contrary. See Bd. of

3    Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972) (holding "[t]o have a property

4    interest in a benefit, a person clearly must have more than an abstract need or desire for

5    it").

6        In sum, plaintiffs have failed to plausibly allege the deprivation of any

7    constitutionally protected liberty or property interest.

8        Accordingly, plaintiffs' Fourth Claim for Relief will be dismissed.

9                      **CONCLUSION**

10    For the reasons set forth above:

11    1. Plaintiffs' motion for preliminary injunction is hereby DENIED.

12    2. Defendants' motion to dismiss is hereby GRANTED, as follows:

13      a. To the extent defendants move to dismiss plaintiffs' First Claim for Relief, the

14    motion is GRANTED and said claim is DISMISSED without prejudice to refiling at a later

15    date.

16      b. To the extent defendants move to dismiss plaintiffs' Second through Fourth

17    Claims for Relief, the motion is GRANTED and said claims are DISMISSED with leave to

18    amend to cure the deficiencies noted.

19    3. Plaintiffs' First Amended Complaint, if any, shall be filed no later than

20    September 3, 2020.

21      **IT IS SO ORDERED.**

22

23    Dated: August 13, 2020

24                                       MAXINE M. CHESNEY
                                       United States District Judge

25

26

27

28