IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHABNAM ZAFARMAND, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MICHAEL R. POMPEO, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-00803-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT; DISMISSING FIRST AMENDED COMPLAINT WITH PREJUDICE** |

Before the Court is defendants' Motion, filed September 17, 2020, "to Dismiss the First Amended Complaint." Plaintiffs have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

### A.    Factual Background

Plaintiffs are three groups of individuals: (1) U.S. citizens ("Petitioner Plaintiffs") who submitted visa applications for (2) their Iranian siblings or parents ("Beneficiary Plaintiffs") and (3) other Iranian relatives ("Derivative Plaintiffs"). By the instant action, plaintiffs challenge defendants' "withholding of adjudications of case-by-case waivers of Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats" ("PP 9645"). (See First Am. Compl. ("FAC") ¶ 1.)

PP 9645 "prohibits the entry of all immigrants and certain categories of non-immigrants for nationals of Iran" and certain other countries (see FAC ¶ 6), but provides that "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee . . . may, in their discretion, grant

---

[1] By order filed November 30, 2020, the Court took the matter under submission.

waivers on a case-by-case basis" if the "foreign national demonstrates to the consular officer's or CBP official's satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest," see PP 9645 § 3(c).

Plaintiffs allege that although they "fulfilled all requirements to obtain family-based visas," their visa applications were "eventually refused pursuant to PP 9645," and defendants "have failed to adjudicate waivers for all eight Beneficiary and Derivative Plaintiffs." (See FAC ¶¶ 4-5.) According to plaintiffs, as of the filing of the FAC, they have waited an average of 879 days for adjudication of their waivers. (See id. ¶ 18.)

As in their initial complaint, plaintiffs allege, in the FAC, that "defendants, through a team called the 'PP 9645 Brain Trust,' have promulgated secret guidance on the waiver adjudication scheme that is inconsistent with PP 9645 itself." (See FAC ¶ 10.) Specifically, plaintiffs allege, defendants "have unlawfully extended the authority and discretion – that PP 9645 granted only with individual consular officers – to consular managers, visa chiefs, consular section chiefs, and/or consular management, the Visa Office and Quality Support, Inc. contractors." (See id. ¶ 15.) According to plaintiffs, these unlawful actions "demonstrate Defendants' pattern and policy of unreasonable delay in dealing with waiver adjudication" and are "arbitrary and capricious." (See id. ¶ 16.)

**B.     Procedural Background**

On February 3, 2020, plaintiffs filed their initial complaint against defendants, wherein they asserted, based on the above allegations, four Claims for Relief, titled, respectively: (1) "Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1)"; (2) "Administrative Procedure Act, § 706(2)(A) and (D)"; (3) "Mandamus"; and (4) "Procedural Due Process."  By order filed August 13, 2020 ("August 13 Order"), the Court granted defendants' motion to dismiss the initial complaint, affording plaintiffs leave to file an amended complaint.

On September 3, 2020, plaintiffs filed the FAC, wherein they assert two of their initial Claims for Relief, titled, respectively, "Administrative Procedure Act, § 706(2)(A) and (D)" and "Mandamus." In support thereof, plaintiffs essentially repeat their prior allegations from their initial complaint and add various new allegations, discussed in more detail below.

By the instant motion, defendants seek an order dismissing the FAC with prejudice.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

3

**DISCUSSION**

As noted, defendants seek an order dismissing plaintiffs' two Claims for Relief with prejudice. The Court addresses each claim, in turn.

**A.  First Claim for Relief**

By their First Claim for Relief, plaintiffs allege defendants have engaged in arbitrary and capricious conduct, discussed below, in violation of Sections 706(2)(A) and (D) of the Administrative Procedure Act ("APA").

**1.  Alleged Usurpation of Consular Authority**

Plaintiffs again allege that a consular officer "must . . . obtain concurrence from consular managers, visa chiefs, consular section chiefs, consular management, the Visa Office and/or contractors with Quality Support, Inc. . . . before the consular officer is allowed to issue [an] applicant a visa, even though that usurpation of consular officer authority is unlawful under PP 9645."  (See FAC ¶ 74.)

In moving for dismissal, defendants contend "the Court has already rejected practically the same allegations as those presented in the [FAC]," and plaintiffs "have failed to cure the fatal defects in the Original Complaint."  (See Mot. at 16:5-6, 19:13.)  As set forth below, the Court agrees.

First, as to the above-referenced government officers and entities, plaintiffs, aside from repeating essentially the same allegations as set forth in the initial complaint,[2] now allege that a "heavily redacted . . . flowchart," purportedly obtained from defendants, "makes clear [defendants] are requiring concurrences from the countries-of-concern@state.gov email, the Visa Office, and the Consular Chief."  (See FAC ¶ 13.)  In addition, plaintiffs have submitted with their opposition a Department of State ("DOS") document, titled "Operational Q&A on P.P. 9645 Travel Restrictions" and dated June 27, 2019 ("Operational Q&A"), which, plaintiffs argue, demonstrates that consular officers,

---

[2] Those allegations are set forth in detail and discussed in the August 13 Order (see August 13 Order at 18:10-19:14), and, consequently, will not be repeated herein.

4

contrary to PP 9645, are not given the discretion to issue waivers without approval. In particular, plaintiffs point to portions of the Operational Q&A stating a "waiver decision may not be resolved on the same day as the in-person interview," and that waiver decisions must be made with "managerial approval" and the "concurrence of the visa chief . . . or consular section chief, . . . following any required administrative processing." (See Opp. Ex. A at 2, 4.)[3]

As defendants point out, and as set forth at greater length in the August 13 Order, however, plaintiffs fail to show any government officer and entity to which plaintiffs refer is not a "consular officer" as defined by the Immigration and Nationality Act and its regulations. (See August 13 Order at 18:10-20:9 (stating, "plaintiffs have failed to submit any evidence to show the . . . relatively broad . . . statutory and regulatory definitions of consular officer do not include consular managers, consular section chiefs, visa chiefs, or Visa Office employees")); see also 8 U.S.C. § 1101(a)(9) (defining "consular officer" as "any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas"); 22 C.F.R. § 40.1(d) (stating the term "consular officer" includes "commissioned consular officers and the Deputy Assistant Secretary for Visa Services, and such other officers as the Deputy Assistant Secretary may designate for the purpose of issuing nonimmigrant and immigrant visas").

Further, even assuming such officers and entities are not "consular officers," and even assuming their "concurrence" is required for waiver determinations, the FAC, as with the initial complaint, fails to make clear their "exact role in the waiver adjudication

---

[3] Defendants argue plaintiffs "improperly rely on" the Operational Q&A as "new extrinsic evidence." (See Reply at 3:21-22.) Although, as plaintiffs note, a court may consider documents whose contents are, as here, alleged in but not physically attached to the complaint and whose authenticity has not been questioned, plaintiffs have cited to no authority holding a plaintiff, rather than a moving defendant, can submit such evidence and, in the case cited by defendants wherein the plaintiffs did so, the issue was not raised. Nevertheless, the Court will, in the interest of judicial economy, consider the Operational Q&A rather than require plaintiffs to request leave to amend to include it in a new pleading.

5

process" or "the extent to which consular officers maintain discretion to grant or deny waivers." (See August 13, 2020 Order at 20:10-13.) Indeed, as set forth in the August 13 Order, PP 9645 itself "envisions interagency coordination" (see id. at 20:13-16); see also PP 9645 § 3(c) (providing "[t]he Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate"), and, consistent therewith, evidence attached to the FAC "suggests the involvement of other individuals or entities is for the purpose of coordination and information sharing, with the ultimate waiver determination resting with the consular officer" (see August 13 Order at 20:20-22); see also FAC Ex. B (Decl. of Joel Nantis, Director of Domestic Operations of the Visa Office) ¶ 28 (stating "consular officer may also . . . request Visa Office coordination to obtain screening and vetting information from interagency partners"); FAC Ex. C (Congressional Test. of Edward Ramotowski, Deputy Assistant Secretary, Bureau of Consular Affairs) at 3 (stating "interagency security review" was conducted "to provide consular officers information on whether or not the applicant's entry into the United States would pose a threat to national security or public safety").)

Moreover, contrary to plaintiffs' assertion, a consular officer's inability to make waiver determinations on the same day as a visa applicant's interview does not demonstrate a lack of discretion to make such final determinations; as the Court noted in the August 13 Order, "thorough national security vetting . . . is critical to achiev[ing] a fundamental purpose of the Proclamation," specifically, "reduc[ing] the risk of dangerous individuals entering the United States." (See August 13 Order at 14:1-4 (internal quotation and citation omitted).)

Next, as to the above-referenced contractors, plaintiffs again rely on their earlier allegations describing an email, bearing the subject line "Follow up on PP9645 Waiver SAOs – EO17 Refusals for Syrian IVO Cases" (see FAC Ex. A) and sent by Kunduz Jenkins ("Jenkins"), an individual affiliated with Quality Support, Inc., to individuals

described by plaintiffs as "Visa Office employees" (see FAC ¶ 78).[4]  In addition, plaintiffs have now included an allegation that Jenkins was "not . . . a consular officer" or "DOS employee" (see id. ¶¶ 80-81), and an allegation that an "EO17" code referenced in Jenkins' email is "the 'refusal code' that must be waived when a visa applicant 'meets the national security/public safety criterion of the three-pronged waiver criteria'" (see id. ¶ 79).

Plaintiffs' additional allegations, however, do not suffice to support their claim that outside contractors play an improper role in the waiver decision, and, to the extent plaintiffs rely on two recently-decided district court cases finding similar allegations sufficient at the pleadings stage, see Razi v. Pompeo, 20-cv-0982-W-MSB, 2020 WL 6262380 (S.D. Cal. Oct. 23, 2020);[5] Najafi v. Pompeo, 19-cv-05782-KAW, Doc. No. 68 (N.D. Cal. Sept. 14, 2020), the Court is not persuaded by the reasoning therein.  In particular, even assuming the truth of plaintiffs' arguably conclusory assertion that Jenkins is not a consular officer, plaintiffs' new allegations fail to clarify the meaning of the above-referenced email, and, consequently, plaintiffs have again failed to state a "plausible" claim, see Ashcroft, 556 U.S. at 678, based thereon (see August 13 Order at 21:8-15 (finding "import of [Jenkins' email] is, in the absence of context or supporting evidence, unclear"; noting, "[t]here is nothing to clarify, for example, whether the 'refusals' referenced therein constitute final directives to consular officers as opposed to

---

[4] In said email, Jenkins, whose signature block reads "Visa Analyst (Syria, Lebanon)," "Bureau of Consular Affairs/ Visa Office," and "Contractor: Quality Support, Inc.," states, "we've sent today refusals under EO17 for the following PP Waiver SAOs [security advisory opinions] back to post."  (See FAC Ex. A at 2-3; see also FAC Ex. C at 3.)

[5] Although the Court has read and considered Razi, as well as the other case cited by plaintiffs in their "Notice of Supplemental Authority," see Ashtari v. Pompeo, Case No. 19-cv-03797-APM, Doc. No. 17 (D.D.C. Oct. 23, 2020), the Court has not considered any arguments made by plaintiffs in connection with those citations.  See Civil L.R. 7-3(d)(2) (stating "counsel may bring to the Court's attention a relevant judicial opinion published after the date the opposition . . . was filed by filing and serving a Statement of Recent Decision, containing a citation to and providing a copy of the new opinion–without argument").

evaluations transmitted for such officers' consideration")).

Accordingly, to the extent the First Claim for Relief is based on the alleged usurpation of consular officer authority, it is subject to dismissal.

### 2. Alleged Failure to Use Enhanced Automated Screening and Vetting Process

Plaintiffs also allege defendants were arbitrary and capricious in deciding not to use the "new enhanced automated screening and vetting process" to adjudicate plaintiffs' waivers. (See FAC ¶ 117 (internal quotation and citation omitted).)

In that regard, defendants argue the Court "should reject Plaintiffs' 'automated screening' theory" because it is "practically identical to the one presented in the Original Complaint." (See Mot. at 21:10-11.) As set forth below, the Court agrees.

In particular, plaintiffs, in relying on the above-referenced theory, fail to include any new allegations in support thereof and thus fail to cure the deficiencies in the initial complaint. (See August 13 Order at 27:5-12 (finding PP 9645 "does not require the use of any such automated system, and, as the enhanced automated screening occurs prior to the interview, plaintiffs, who have already attended their consular interviews, fail to plausibly allege how a failure to use such screening in their cases is arbitrary, capricious, or an abuse of discretion" (internal quotation, citation, and alteration omitted))); see also Kayvan v. Pompeo, No. 5:19-CV-08071-EJD, 2020 WL 5834805, at *10 (N.D. Cal. July 28, 2020) (dismissing APA claim where plaintiffs alleged defendants failed to use new enhanced automated screening process; noting, "PP 9645 does not mandate the use of an automated system," any "automated screening is used at the pre-interview stage," and plaintiffs "[were] past the pre-interview stage" (internal quotations and citations omitted)).

Accordingly, to the extent the First Claim for Relief is based on defendants' alleged failure to use the enhanced automated screening and vetting process to adjudicate plaintiffs' waivers, it is subject to dismissal.

### 3. Alleged Perpetual Loop of Administrative Processing

Lastly, plaintiffs allege defendants "have essentially shut off the line for Plaintiffs

and are using their authority . . . to funnel others in front of Plaintiffs, over and over again" (see FAC ¶ 119), thereby leaving "visa applicants, including Plaintiffs, in a perpetual loop of administrative processing" (see id. ¶ 129).

Defendants argue plaintiffs' allegations in support thereof are "practically the same as the Original Complaint." (See Mot. at 22:8-9.) Plaintiffs have not responded to that argument, and, the Court, for the same reasons as set forth in its August 13 Order, again finds plaintiffs' allegations fail to support a plausible claim for relief based on the above theory. (See August 13 Order at 27:13-24 (finding "plaintiffs' conclusory allegation that visa applicants are caught in a perpetual loop of administrative processing lacks adequate factual support" (internal quotation and citation omitted)).)

Accordingly, to the extent plaintiffs' First Claim for Relief is based on the alleged perpetual loop of administrative processing of plaintiffs' waivers, it is subject to dismissal.

### 4. Conclusion

In light of the foregoing, the Court will dismiss plaintiffs' First Claim for Relief, and, given plaintiffs' failure to cure the previously identified deficiencies therein, such dismissal will be without further leave to amend.

**B.  Second Claim for Relief**

By their Second Claim for Relief, plaintiffs seek a writ of mandamus based on the usurpation of consular officer authority and unreasonable delay in adjudicating waivers.

As set forth in the August 13 Order, "[m]andamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." (See August 13 Order at 28:2-6 (quoting Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003)).)

To the extent plaintiffs' mandamus claim is based on an alleged usurpation of consular officer authority, the claim is derivative of plaintiff's First Claim for Relief and fails for the same reasons that claim fails.

To the extent plaintiffs' mandamus claim is based on an alleged unreasonable delay in adjudicating waivers, plaintiffs fail to identify any new factual allegations in the FAC in support thereof, or any other reason for the Court to reconsider its prior finding that plaintiffs "have failed to show the length of time they have waited for adjudication of their waiver applications is unreasonable." (See August 13 Order at 17:25-28.)[6] Although the period of time during which plaintiffs have waited for adjudication of their waivers is longer than it was when the Court issued its August 13 Order, courts, as set forth therein, "have generally found delays of four years or less not to be unreasonable" in the immigration context. (See id. at 12:17-21 (quoting Islam v. Heinauer, 32 F. Supp. 3d 1063, 1071-72 (N.D. Cal. 2014)).) Here, plaintiffs have waited, even as of the date of this order, less than three years.

Accordingly, the Court will dismiss plaintiffs' Second Claim for Relief, and, given plaintiffs' failure to cure the previously identified deficiencies therein, such dismissal will be without further leave to amend.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is hereby GRANTED, and the FAC is hereby DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: December 9, 2020

MAXINE M. CHESNEY
United States District Judge

---

[6] To the extent plaintiffs now argue defendants have not acted in accordance with 9 FAM § 504.7-2(b), a statutory note to 8 U.S.C. § 1201, and 22 C.F.R. § 42.81(e), their reliance thereon is, as defendants point out, misplaced.